1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT TACOMA

10

11
HARBORVIEW FELLOWSHIP, a
Washington non-profit corporation,

CASE NO. 3:20-cv-05518-RJB

ORDER GRANTING MOTION TO
DISMISS

12
                    Plaintiff,

13
        v.

14
JAY INSLEE, Governor, in his official
capacity, SECRETARY OF HEALTH
15
UMAIR A. SHAH,[1] in his official
capacity, ROBERT FERGUSON, in his
16
official capacity as Attorney General of
Washington, PAUL PASTOR, in his
17
official capacity as Pierce County
Sheriff, and ANTHONY L-T CHEN, in
18
his official capacity as Director of
Health Tacoma-Pierce County Health
19
Department,

20
                    Defendants.

21

22

23
[1] Dr. Umair A. Shah was appointed Washington State Secretary of Health on December 21, 2020.  Pursuant to Fed.
R. Civ. P. 25(d), Dr. Shah should be substituted for the former Secretary of Health, Dr. John Wiesman as a
24
defendant and the caption should be amended to reflect this change.

ORDER GRANTING MOTION TO DISMISS - 1

This matter comes before the Court on Defendants Washington State Governor Jay Inslee, Washington State Secretary of Health Umair A. Shah, and Attorney General Robert Ferguson's Motion to Dismiss.  Dkt. 76.  The Court has considered the pleadings filed regarding the motion and the remaining file.

In this case, the Plaintiff, a nondenominational church in Pierce County, Washington, challenges portions of the Washington State "Safe Start Reopening Plan" entitled "Phase 1 and 2 Religious and Faith-Based Organizations Covid-19 Requirements" which were instituted in response to the COVID-19 pandemic.  Dkt. 1.

Governor Inslee, Secretary of Health Shah, and Attorney General Ferguson, sued in their official capacities, moving for dismissal of the claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(1).  For the reasons provided below, their motion (Dkt. 76) should be granted, the claims against them dismissed without prejudice, and the case closed.

The Defendants move for dismissal of this case for lack of subject matter jurisdiction by making both a facial attack on the allegations in the Second Amended Complaint and by attacking the factual basis of some of those allegations.  Accordingly, the Court can consider evidence outside the Second Amended Complaint in resolving whether it has jurisdiction without converting the motion into a motion for summary judgment.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## I.      FACTS AND PROCEDRUAL HISTORY

On January 21, 2020, what was thought to be the first case of COVID-19 in the United States was diagnosed in the State of Washington.  Dkt. 23.  COVID-19 is caused by the SARS-CoV-2 virus, which, at the time was a novel coronavirus – it had not been identified in humans prior to December 2019.  *Id.*  On February 29, 2020, Washington State Governor Inslee declared

a state of emergency and then issued several proclamations over the next few months to attempt to slow the spread of COVID-19.  On March 23, 2020, Governor Inslee issued Proclamation 20-25, "Stay Home, Stay Safe" which prohibited Washingtonians from leaving their homes except for essential activities and essential employment.  After Washington made progress in slowing the spread of the disease, on May 4, 2020, Governor Inslee issued Proclamation 20-25.3, "Safe Start Reopening Plan," which was a four-phased reopening plan.  Included in the Safe Start Reopening Plan was "Phase 1 and 2 Religious and Faith-Based Organizations Covid-19 Requirements" ("Religious Organizations Requirements"), portions of which are the subject of this lawsuit.  Dkt. 24-1, at 106.  By late May, 2020, Pierce County, where Plaintiff is situated, was in Phase two of the reopening plan; under the Religious Organizations Requirements, it was allowed up to 100 persons to participate in outdoor religious services and for indoor services, up 25% of the building's capacity or 50 people, whichever is fewer.  *Id.*

On June 1, 2020 the Plaintiff filed this case against Governor Jay Inslee and former Washington Secretary of Health John Wiesman asserting that the Religious Organizations Requirements violated its First and Fourteenth Amendment rights under the U.S. constitution via 42 U.S.C. § 1983, and the Washington State Constitution.  Dkt. 1.  The First Amended Complaint added Washington's Attorney General Robert Ferguson as a Defendant.  Dkt. 27.

On June 18, 2020, the Religious Organizations Requirements were updated for counties in Phase 2, (like Pierce County) allowing outdoor services of up to 100 persons and indoor services of 25% of building capacity or 200 persons, whichever was smaller.  Dkt. 41-1.  Later that day (June 18, 2020) the Plaintiff's motion for a temporary restraining order was denied.  Dkt. 42.  On June 23, 2020 and again on July 24, 2020, the Sec. of Health issued orders

requiring, with some exceptions, that masks be worn in indoor public spaces and outdoor spaces where social distancing could not be maintained.  Dkt. 85-1, at 2-5.

The Plaintiff moved for and was granted leave to file a second amended complaint.  Dkt. 52.  Plaintiff filed the Second Amended Complaint on August 21, 2020 and added Pierce County Washington Sheriff Paul Pastor and Dr. Anthony L-T Chen, head of the Tacoma-Pierce County Health Department, as Defendants.  Dkt. 53.  Dr. Chen's motion to dismiss was granted on December 9, 2020 (Dkt. 72) and Sheriff Pastor's motion to dismiss was granted on December 21, 2020 (Dkt. 75).

The Second Amended Complaint alleges that on August 10, 2020, the Religious Organizations Requirements were amended to allow 200 people for outdoor services and to require that all parties, including those leading services, wear a mask.  Dkt. 53.  It maintains that unlike business, religious organizations were still subject to the 25% capacity or 200-person caps, whichever was less, for indoor services.  *Id.*  The Second Amended Complaint alleges that under the reopening guidance at the time, offices, restaurants, and taverns in Phase 2 were allowed occupancy of 50% of their building capacity and did not face any per person caps.  *Id.* The Second Amended Complaint asserts that, unlike presenters at religious functions, under the Safe Start Reopening Plan, diners in restaurants and reporters (while speaking) were permitted to remove their masks in public.  *Id.*, at 17.  The Second Amended Complaint also asserts that religious organizations were subject to 15 additional requirements.  *Id.*

The Second Amended Complaint alleges that the church has around 250 – 325 people that attend their service on Sunday.  Dkt. 53, at 10.  It asserts that its sanctuary can seat 475 people, and has classrooms, meeting rooms and offices which can accommodate around an

additional 107 socially-distanced people.  *Id.*  The Second Amended Complaint alleges that

worshiping as a group is a core tenant of the church's beliefs.  *Id.,* at 10-11.  It also asserts that

"individuals leading the service have not worn masks while leading worship, preaching, or

giving announcements" as required by the Religious Organizations Requirements and maintains

that "[w]earing masks while leading the service would materially interfere with individuals'

ability to communicate and be understood by worshipers (whether in-person or viewing a service

streamed over the Internet)."  *Id.*, at 14.

   The Second Amended Complaint asserts claims for violations of the first amendment to

the U.S. constitution's protections of freedom of religion and speech.  Dkt. 53.  It seeks

declaratory and injunctive relief as well as "judgment for all damages authorized under federal

law, including under 42 U.S.C. § 1983," and attorneys' fees and costs.  *Id.*

   In the fall and winter of 2020, the State of Washington, like every other state in the

country, experienced a substantial rise in Covid-19 cases followed by an increase in

hospitalizations. Wash. Dep't of Health, COVID-19 Data Dashboard, Epidemiological Curves

www.doh.wa.gov/Emergencies/COVID19/DataDashboard (updated Feb. 17, 2021).

   On November 17, 2020, due to the rise in cases, the Governor suspended the Safe Start

Reopening Plan and additional restrictions were imposed on individuals, businesses and other

entities.  Dkt. 77.  On December 8, 2020, the Governor issued proclamation 20-25.9 which

continued to allow indoor religious services at 25% of building capacity or 200 people,

whichever was fewer, and required attendees were required to wear masks. Dkt. 77-1, at 5.

There was no restriction on outdoor services.  *Id.*  Bars, restaurants, gyms were closed for indoor

services, and other entities, like stores and offices were limited to 25% of building capacity.  *Id.*

According to the Plaintiff's senior pastor, on December 14, 2020, he received a voicemail from Jean Frost of the Washington Department of Health, informing him that the Department of Health had received complaints that some individuals at the church were not wearing face coverings, not social distancing, or that they were over the capacity limits. Dkt. 83, at 2. The pastor returned her call and asked that she send him an email about the issue. *Id.* Her email, dated December 16, 2020, "Spiritual and Faith Based Services – Violation Governor's Proclamation" provided:

> Good Morning,
>
> The Department of Health recently received communication through Coronavirus.wa.gov (Report a Safe Start Violation) that some individuals in your establishment are not wearing face coverings, not social distancing, or that you are over the capacity requirements as outlined in the "Safe Start" reopening plan.
>
> This letter is a courtesy. If we receive future complaints, we will contact you by phone and provide technical assistance. Below is a variety of resources you can use to ensure the safety of your community.

Dkt. 83-1, at 1. The email then provides several website links including to the Religious Organizations Requirements, the Safe Start Reopening Plan, "frequently asked questions" on the Governor's reopening plan, the Department of Health's website, including "resources and recommendations" and information on statewide face covering requirements. *Id.,* at 1-2.

According to Ms. Frost, since August of 2020, she has contacted 162 houses of worship about complaints and offered technical assistance to help them come into compliance with the state's COVID-19 requirements. Dkt. 86, at 2. Other than offering technical assistance, both she and Kelly Cooper, the Department of Health's Policy and Legislative Director, state that the Department of Health has a policy that it takes no further action (including referrals to law enforcement, prosecuting attorney, or other governmental authority for civil prosecution) against religious organizations who refuse to comply. Dkts. 85 and 86, at 2-3. They maintain that the

1    Department of Health focuses only on voluntary compliance with religious organizations.  *Id.*

2    According to Director Kelly, the Department of Health bases its decision on whether to take

3    further action based on the entity involved.  Dkt. 85.  For example, if the non-complying entity

4    was a healthcare provider, the Department of Health "may open an investigation and potentially

5    take enforcement action."  *Id.*

6         On December 21, 2020, after the U.S. Supreme Court's decision in *Roman Catholic*

7    *Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) and the Ninth Circuit Court of Appeals

8    decision in *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1234 (9th Cir. 2020), the

9    Governor issued proclamation 20-25.10.  Dkt. 71, at 9-14.  As is relevant here, that proclamation

10   made the 200-person cap on indoor services advisory only and retained the 25% building

11   capacity requirements.  *Id.,* at 12.

12        On January 5, 2021, the Governor announced a new phased reopening plan called

13   "Healthy Washington – Roadmap to Recovery."  Dkt. 77-1, at 30-33.  On January 11, 2021, the

14   Religious Organizations Requirements were updated, to include the requirement that face

15   coverings are to be "worn by all during the service except when an individual is addressing the

16   congregation."  Dkt. 77-1, at 47.  They explain that, "[i]f there are two or more speakers

17   scheduled to address the congregation during the service, only one speaker at a time may remove

18   their face covering."  *Id.* They further provide that "[i]f a speaker decides not to wear a

19   face covering, it is recommended that a Plexiglas 3-sided barrier is used during the service."  *Id.*

20        The Governor, Secretary of Health, and Attorney General now move for dismissal of the

21   claims asserted against them arguing that (1) the Plaintiff's claims against rescinded hard

22   attendance caps are moot, (2) the Plaintiff lacks standing to challenge the Religious

23

24

ORDER GRANTING MOTION TO DISMISS - 7

1    Organizations Requirements, and (3) the Eleventh Amendment bars claims against each of the

2    remaining Defendants – Governor Inslee, Sec. Shah, and Attorney General Ferguson.  Dkt. 76.

3          The Plaintiff opposes the motion, noting that its' challenge to the 200-person cap for

4    indoor worship services is "vindicated."  Dkt. 82.  It argues that it does have standing to

5    challenge the Religious Organizations Requirements and maintains that the Eleventh

6    Amendment does not bar its claims.  *Id.*

7          The moving Defendants filed a reply (Dkt. 84) and the motion is ripe for review.

8                                    **II.   DISCUSSION**

9    **A.  MOTION TO DISMISS STANDARD**

10         A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual

11   allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the

12   Constitution, laws, or treaties of the United States, or does not fall within one of the other

13   enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or

14   controversy within the meaning of the Constitution; or (3) is not one described by any

15   jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198 (1962).  A federal court is presumed to

16   lack subject matter jurisdiction until plaintiff establishes otherwise.  *Kokkonen v. Guardian Life*

17   *Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d

18   1221, 1225 (9th Cir. 1989).  Therefore, plaintiff bears the burden of proving the existence of

19   subject matter jurisdiction.  *Stock West*, at 1225.

20         A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter

21   jurisdiction can be either a facial attack or a factual one.  *Safe Air for Everyone v. Meyer*, 373

22   F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations

23

24

1  contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The

2  truth of the complaint's allegations is presumed. *Id.*

3  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by

4  themselves, would otherwise invoke federal jurisdiction." *Id.* "In resolving a factual attack on

5  jurisdiction, the district court may review evidence beyond the complaint without converting the

6  motion to dismiss into a motion for summary judgment." *Id.* (*citing Savage v. Glendale Union*

7  *High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003)). "Once the moving party has converted the

8  motion to dismiss into a factual motion by presenting affidavits or other evidence properly

9  brought before the court, the party opposing the motion must furnish affidavits or other evidence

10  necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, at 1039.

11  The court need not presume the truthfulness of the plaintiff's allegations in a factual attack under

12  Rule 12(b)(1). *Id.*

13  **B. CHALLENGE TO HARD ATTENDANCE CAP FOR INDOOR SERVICES**

14  The Plaintiff's claims relating to the hard attendance cap for indoor services should be

15  dismissed as moot. This requirement is no longer a mandatory provision of the Religious

16  Organizations Requirements; while the 25% building capacity requirement remains, it is now

17  only "recommended" that houses of worship have a hard cap on attendance to 200 people or less.

18  The Plaintiff argues that the restrictions have changed over time and so the cap could be

19  restated, making its claims not moot. "The repeal, amendment, or expiration of challenged

20  legislation is generally enough to render a case moot and appropriate for dismissal" unless the

21  government is "reasonably expected to reenact offending provisions." *Bd. of Trustees of Glazing*

22  *Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019). The Plaintiff fails to

23  make any showing that the Governor is "reasonably expected to reenact" the hard attendance

24

1    caps for indoor services.  Claims based on the hard attendance caps for indoor services should be

2    dismissed as moot.

3        **C. STANDING**

4        "[N]o principle is more fundamental to the judiciary's proper role in our system of

5    government than the constitutional limitation of federal-court jurisdiction to actual cases or

6    controversies.  One element of the case-or-controversy requirement is that plaintiffs must

7    establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408

8    (2013)(*internal quotation marks and citations omitted*).  "A plaintiff seeking to establish

9    standing must show that: (1) he or she has suffered an injury in fact that is concrete and

10   particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged

11   conduct; and (3) the injury is likely to be redressed by a favorable court decision." *W.*

12   *Watersheds Project v. Grimm*, 921 F.3d 1141, 1146 (9th Cir. 2019).

13       The Defendants' motion to dismiss the Plaintiff's pre-enforcement case without prejudice

14   (Dkt. 76) should be granted.  The Plaintiff has failed to show that it faces a genuine threat of

15   injury – that of imminent enforcement or prosecution.

16       In evaluating the genuineness of a claimed threat of prosecution, courts in the Ninth

17   Circuit look to whether a plaintiff has (1) "articulated a concrete plan to violate the law in

18   question," (2) "whether the prosecuting authorities have communicated a specific warning or

19   threat to initiate proceedings," and (3) "the history of past prosecution or enforcement under the

20   challenged statute." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir.

21   2000).

22       Parties do not dispute that at least in regard to the requirement that only one person at a

23   time remove their mask to address attendants, the Plaintiff has articulated a concrete plan to

24

1   violate the Religious Organizations Requirements.  The Second Amended Complaint indicates

2   that individuals conducting services do not wear masks.  The first requirement under *Thomas* is

3   met.

4          The Plaintiff has failed to show that "the prosecuting authorities have communicated a

5   specific warning or threat to initiate proceedings," the second *Thomas* requirement.  The Second

6   Amended Complaint alleges that Governor Inslee has emphasized that "individuals and entities

7   that violate the restrictions in his emergency proclamations and reopening plan may face

8   criminal or civil penalties" and his office "has publicly stated its intention to seek enforcement of

9   the Governor's proclamations and accompanying health regulations against worship or other

10  religious services." Dkt. 53, at 8.  Where, as here, Defendants attack the factual validity of this

11  allegation, the Court need not assume the truth of this assertion.  *Safe Air*, at 109.  The Plaintiff

12  also points to the phone call and email from the Department of Health as evidence that the State

13  intends to enforce the restrictions against it.  The Plaintiff has failed to carry its burden.  There is

14  no evidence that a specific warning or threat to initiate proceedings has been made either in the

15  phone call or the email.  "When plaintiffs do not claim that they have ever been threatened with

16  prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do

17  not allege a dispute susceptible to resolution by a federal court." *Thomas*, at 1140.  The

18  Defendants have demonstrated that the Department of Health has taken all the action it intends to

19  take with the Plaintiff.  There is no evidence that the Governor or the Attorney General have

20  issued a specific warning to threat to initiate proceedings against religious organizations for

21  failure to comply with the Religious Organizations Restrictions.  The second *Thomas*

22  requirement has not been met.

23

24

ORDER GRANTING MOTION TO DISMISS - 11

1    Further, the Plaintiff has also failed to show that there has been a "the history of past

2  prosecution or enforcement under the challenged statute," the third *Thomas* requirement.  The

3  Second Amended Complaint points out that Attorney General Ferguson has taken some

4  enforcement actions against business owners.  Dkt. 53, at 8. The Plaintiff has failed to allege,

5  much less show with evidence, that an enforcement action has been taken against a religious

6  organization in the State of Washington.  While there have been instances of enforcement actions

7  in other states against religious organizations, the Plaintiff must show that there is a history in

8  this state.  The third *Thomas* requirement has not been met.

9    **D.  CONCLUSION**

10    The Plaintiff's "claimed injury- [its] fear of enforcement or prosecution-fails the

11  constitutional component of the ripeness inquiry." *Thomas,* at 1139.  The Defendants' motion to

12  dismiss should be granted and the case dismissed without prejudice for lack of subject matter

13  jurisdiction.  The Court need not reach the Defendants' additional grounds for dismissal brought

14  under the Eleventh Amendment.

15                          **III.    ORDER**

16    It is **ORDERED** that:

17    • Pursuant to Fed. R. Civ. P. 25(d), newly appointed Washington State Secretary of

18      Health Umair A. Shah **IS SUBSTITUTED** for former Washington State

19      Secretary of Health John Wiesman as a Defendant, and

20    • Defendants Washington State Governor Jay Inslee, Washington State Secretary of

21      Health Umair A. Shah, and Attorney General Robert Ferguson's Motion to

22      Dismiss (Dkt. 76) **IS GRANTED**; and

23    • The claims asserted against them **ARE DISMISSED WITHOUT PREJUDICE**.

24

1    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

2    to any party appearing *pro se* at said party's last known address.

3    Dated this 19th day of February, 2021.

4

5

6    ROBERT J. BRYAN
     United States District Judge

ORDER GRANTING MOTION TO DISMISS - 13